# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **MINODORA GRUNBERG,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.** |
| | : | **3:05-cv-1201 (VLB)** |
| **QUEST DIAGNOSTICS, INC.,** | : | |
| **Defendant.** | : | **February 5, 2008** |

## MEMORANDUM OF DECISION AND ORDER GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. #56]

The plaintiff, Minodora Grunberg, brings this case against the defendant, Quest Diagnostics, Inc. ("Quest"), her former employer, asserting claims for relief under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 <u>et seq.</u>, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 <u>et seq.</u>, the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 <u>et seq.</u>, and Connecticut common law. Currently pending before the court is Quest's motion for summary judgment. [Doc. #56] For the reasons hereinafter set forth, the motion for summary judgment is GRANTED.

## I. Standard

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" <u>Bouboulis v. Transp. Workers Union of Am.</u>, 442 F.3d 55, 59 (2d Cir. 2006) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing that no genuine issues exist as to any material facts. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-25 (1986). If the moving party meets its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." <u>Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.</u>, 302 F.3d 83, 91 (2d Cir. 2002).

"The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." <u>Western World Ins. Co. v. Stack Oil, Inc.</u>, 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted). A party also may not rely on conclusory statements or unsupported allegations that the evidence in support of the motion for summary judgment is not credible. <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 532 (2d Cir. 1993).

The court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor." Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006).

## II. Facts

The following facts relevant to this motion are undisputed, unless noted otherwise. Grunberg worked for Quest from June 6, 2001 until March 15, 2004. Quest provides medical diagnostic testing services to the public through its patient service centers and laboratories.

On May 31, 2001, Grunberg applied to Quest for the position of Field Operations Supervisor ("FOS") for the New Haven, Connecticut metro area. Included in her application was an Employee Agreement, signed by Grunberg, that reads:

> 13. I understand and acknowledge that I may terminate my employment at any time and for any reason, with appropriate notice to the Company. I also understand that the Company may terminate my employment at any time and for any reason. Except for this Agreement, there are no other written or oral agreements relating to my employment. . .
>
>       *            *            *
>
> 15. I understand this Agreement cannot be amended except if I and an Operations Commercial Leader who is a member of the Company's Focus Group sign a document which indicates our intent to modify this Agreement.

[Doc. #56, Ex. C] Grunberg does not claim nor is there any evidence that the Employee Agreement was amended, affecting her claims.

On June 6, 2001, Grunberg accepted Quest's offer of employment as FOS by signing an offer letter that states "[b]y accepting this offer, you are agreeing . . . that the only binding contract between you and the company is the Employee Agreement contained in the Company's application."  [Doc. #56, Ex. D]  On June 19, 2001, Grunberg signed an Acknowledgment of Receipt of Quest's Employee Handbook stating:  "you understand that the handbook is only a summary and is not to be construed in any way as a binding agreement. . . .  You understand that your employment is at-will and you have the right to terminate your employment at any time and the company has the same right."  [Doc. #56, Ex. E]  Grunberg does not recall ever receiving a copy of the Employee Handbook, but does not dispute she signed the Acknowledgment of Receipt.

Although she has not produced any evidence, Grunberg has a vague recollection of the subsequent promulgation of company policies.  She recalls occasionally receiving memoranda summarizing various company policies at meetings with management, but she could not recall which policies she received in memorandum format or the level of detail in those summaries.

As FOS, Grunberg was responsible for the operations of nine patient service centers and two laboratories located in the New Haven metro area.  She reported directly to Dorothy Burts, Director of Operations for Quest.  Grunberg's

position required her to travel between the eleven offices under her direct supervision, and Quest's Connecticut headquarters in Wallingford, where Burt's worked.

Grunberg began reporting symptoms of depression to her physician in 2000, prior to her employment with Quest. Her symptoms persisted throughout her tenure of employment. Grunberg informed no one associated with Quest that she was diagnosed with, experienced symptoms of or sought treatment for depression. She occasionally cried at work, and sometimes wore latex gloves while in patient service centers for fear of exposure to germs, a symptom of her diagnosis.

On January 10, 2003, Grunberg requested an internal transfer to fill the open position of Branch Supervisor for the Stamford, Connecticut, metro area. Burts denied the transfer request, citing deficient managerial skills and explaining Grunberg was having difficulty dealing with her inferiors in New Haven. At Grunberg's request, Burts and Grunberg met to discuss the denial of her transfer request, but Burts declined to provide the names of specific employees who had complained about Grunberg.

In the Spring of 2003, the New Haven metro area floater, an employee who's primary responsibility is to cover for other, absent employees, resigned. Quest declined to replace the floater because the loss of a significant account in the New Haven area altered its demands on employees and resources available.

Quest internal procedures dictate that the FOS perform the duties of any unavailable employees. After the floater position was eliminated, Grunberg was forced to take on additional duties by filling in for absent employees previously replaced by the floater. Grunberg complained to Burts that her resources were strained in the absence of a floater. Burts decided not to reinstate the floater position.

On June 13, 2003, Grunberg again requested an internal transfer, this time into the open position of FOS for the Stratford, Connecticut, metro area. Burts again denied the request, restating the same reason for rejecting Grunberg's prior transfer request.

In August 2003, Grunberg met with Robert Moody, a senior officer in Quest's Human Resources Department, to discuss her relationship with Burts and the denial of her transfer requests. At the meeting, during which no formal action was taken by either Moody or Grunberg, Moody told Grunberg she appeared "very stressed." On September 23, 2003, Burts and Grunberg met again, this time at Burts's initiation, to discuss Grunberg's performance. During their conversation, Grunberg indicated that FOS for New Haven was not the right position for her. Burts informed Grunberg Quest would post her position as an opening and seek a replacement, but encouraged Grunberg to use the company's internal placement system to search for a new, more suitable position. Grunberg recalls Burts altering her position at the close of the meeting, saying Quest *may* post her position as an opening if Grunberg's performance did not improve.

6

Burts also told Grunberg she appeared stressed.

On October 9, 2003, Burts formally requested approval from Quest to post FOS for New Haven as an opening and seek a replacement for Grunberg. On October 14, 2003, Burts's request was approved and the position was posted as an opening on Quest's internal website that day. On October 17, 2003, the position of FOS for New Haven was posted as an opening on Quest's publicly accessible website.

On October 17, 2003, Grunberg began missing work due to her medical condition. On October 21, 2003, Grunberg formally requested FMLA leave, retroactive to October 17, 2001. That same day, Quest confirmed via letter that Grunberg's FMLA request had been approved. The letter explained that Grunberg could use up to sixteen (16) weeks of FMLA leave, and noted "your FMLA leave could be certified through tentatively February 5, 2004." [Doc. #56, Ex. N] Quest hired a new FOS for New Haven while Grunberg was on FMLA leave, on January 18, 2004.

In February 2004, Grunberg claims she left a voicemail message for Burts stating her desire to return to work on February 16, 2004. Burts does not recall receiving a message from Grunberg while she was on leave. She left a similar message for the Quest benefits specialist responsible for her file. On February 5, 2004, Quest sent a letter to Grunberg explaining that her FMLA leave had expired and she had lost her job restoration rights under the FMLA, but that Quest would

continue providing her with health benefits and would be receptive to finding her an open position of employment within the company upon her return from medical leave.  The Quest benefits specialist attached a post-it note to the letter stating "I had to mail this letter to you because your FMLA expires 2/5/04.  However, as long as you return on 2/16/04, there's nothing you have to do."  [Doc. #66, Ex. M]

On February 16, 2004, Grunberg returned to work.  She was informed by her replacement that she was no longer FOS for New Haven.  Grunberg traveled to Quest headquarters in Wallingford and had a meeting with Burts and Moody that afternoon.  Quest confirmed Grunberg's prior position had been filled and offered Grunberg a short term position within the company, at their Stamford location, at the same salary and benefits level, until she could find a permanent position.  Grunberg accepted the temporary position through March 17, 2004.  On March 15, 2004, Grunberg resigned.  On July 25, 2005, Grunberg filed a fourteen count complaint.

### III.  Discussion

The claims still pending[1]  in this case are for:  1) a hostile work

_____

[1]On March 27, 2007, the court (Droney, J) dismissed Grunberg's claim for negligent infliction of emotional distress (count 7). [Doc. #39] In a footnote to her memorandum in opposition of this motion, Grunberg requested leave to withdraw her claims for coercion under CFEPA (count 8) and defamation (count 9) because she was unable to discern any factual predicate for those causes of action.  While this is not the preferred method of withdrawing a claim, the court hereby grants the withdrawal of those claims.

environment in violation of the ADA and CFEPA (counts 1 and 3); 2) retaliation in violation of the ADA and CFEPA (counts 2 and 4); 3) interference and retaliation in violation of the FMLA (counts 13 and 14); 4) negligent supervision (count 5); 5) intentional infliction of emotional distress (count 6); 6) negligent misrepresentation (count 10); 7) breach of contract (count 11); and 8) constructive discharge (count 12).  [Doc. #1]  On July 27, 2007, Quest moved for summary judgment on all then-remaining counts.  [Doc. #56]

## A.  ADA and CFEPA Hostile Work Environment[2]

Grunberg alleges in her complaint that Quest's conduct towards her based on her disability created a hostile work environment in violation of the ADA's anti-discrimination provisions.  Quest asserts in the current motion that Grunberg cannot allege any set of facts that show Quest discriminated against her because of her disability, as no one at Quest had any actual or constructive knowledge of her disability.

The ADA provides that no employer "shall discriminate against a qualified individual with a disability *because of* the disability of such individual."  42 U.S.C. § 12112(a) (emphasis added).  The act defines disability as: "A) a physical or

---

[2]Generally, Connecticut courts use ADA standards to analyze CFEPA disability claims.  <u>See</u> <u>Ann Howard's Apricots Rest. v. Comm'n on human Rights & Opportunities</u>, 237 Conn. 209, 224-26 (1996).  There are, however, some points of differential.  <u>See generally</u> <u>Beason v. United Tech. Corp.</u>, 337 F.3d 271 (2d Cir. 2003).  As such, the court's considerations and findings on Grunberg's ADA hostile work environment and retaliation claims apply equally to her CFEPA hostile work environment and retaliation claims, unless specifically noted otherwise.

mental impairment that substantially limits one or more of the major life activities of such individual; B) a record of such an impairment; or C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).

To prove liability for discrimination under the ADA's first definition of disability, an employer must have notice of the disability.  See Rodal v. Anesthesia Group of Onondaga, 369 F.3d 113, 118 (2d Cir. 2004) (showing an employer had notice of employee's disability an element of a prima facie showing of ADA discrimination).  Grunberg admits that she told no one at Quest of her symptoms or diagnosis of or treatment for depression, and has alleged no facts showing that anyone at Quest had actual knowledge of such symptoms, diagnosis or treatment.  Her argument that her treating doctors knew of her symptoms has no relevance to a finding of whether Quest or any of its employees had notice of her disability.  Further, Grunberg's argument that Moody and Burts's statements that she appeared "stressed" could constitute constructive knowledge of her disability is unpersuasive because 1) those comments were made after the conduct alleged to create a hostile work environment, namely the removal of the floater position and denial of her transfer requests, had already occurred, 2) the observations are not alleged to have concerned Grunberg's general appearance and performance but, instead, regarded only her demeanor during those specific meetings, and 3) a mere comment about stress is insufficient to prove notice of a disability that substantially limits a major life activity.  See 42 U.S.C. § 12102(2)(A); see generally Toyota Motor Mfg., Ky., Inc. v.

<u>Williams</u>, 534 U.S. 184, 197 (2002) (ADA should "be interpreted strictly to create a demanding standard for qualifying as disabled").[3]  In this particular case, the comments were made during a meeting in which Grunberg's supervisors were giving her negative feedback, a circumstance under which one would be expected to experience episodic as opposed to systematic stress.

Grunberg asserts a secondary argument that Quest regarded her as disabled, entitling her to ADA protection under 42 U.S.C. § 12102(2)(C).[4]  She offers no evidentiary support for that proposition.  Courts look to Equal Employment Opportunity Commission ("EEOC") regulations for guidance in interpreting the ADA.  <u>Ryan v. Grae & Rybicki, P.C.</u>, 135 F.3d 867, 870 (2d Cir. 1998).  The EEOC regulations define "regarded as" to mean an individual who:

> 1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
>
> 2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> 3) Has none of the impairments defined [by the regulations] but is

---

[3]The CFEPA has a broader definition of disability that does not require a showing that the employee's symptoms substantially limited a major life activity. <u>See</u> Conn. Gen. Stat. § 46a-51(15).  This does not affect the court's reasoning for two reasons: 1) CFEPA still requires an employer to be on notice of the employee's disability for a discrimination claim, and 2) the facts proffered by Grunberg also do not meet the CFEPA standard for disability.  <u>See</u> <u>Beason</u>, 337 F.3d at 276-79.

[4]The Second Circuit has held there is no "regarded as" disability discrimination under CFEPA.  <u>Beason</u>, 337 F.3d at 279-81.  The following discussion applies only to Grunberg's ADA hostile work environment claim.

> treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l).

None of these definitions can support Grunberg's claim. To fit any of the three definitions of "regarded as," Quest would have had to mistakenly believe that Grunberg had a disability as defined by the ADA. <u>Sutton v. United Airlines</u>, 527 U.S. 471, 489 (1999). There is no credible evidence that any Quest employee believed, mistakenly or not, that Grunberg suffered from depression or any other impairment or disability that substantially effected her major life activities.

Grunberg has not factually shown that she was entitled to protection against discrimination under the ADA. She has not provided any evidence that Quest was on notice of her disability, or that any employee of Quest regarded her as having a disability. In fact, Quest has submitted uncontroverted evidence that none of its employees knew or believed Grunberg had a disability during the relevant time period. Accordingly, the motion for summary judgment as to Grunberg's hostile work environment claims under the ADA and CFEPA is GRANTED, as no reasonable jury could conclude Grunberg was discriminated against because of her depression.[5]

------------------------

[5]The court finds that even if Grunberg qualified for protection from discrimination under the ADA, she has not alleged facts sufficient for her hostile work environment claim to survive summary judgment. For a work environment to be so hostile as to become actionable, "the workplace [must be] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." <u>Kassner v. 2nd Ave.</u>

### C. ADA and CFEPA Retaliation

Grunberg also claims that Quest retaliated against her for opposing its conduct in violation of the ADA. Quest's motion for summary judgment argues that any objections Grunberg raised were not in opposition to any alleged discriminatory practices based on disability and thus not entitled to protection under the ADA.

ADA retaliation claims are analyzed pursuant to the same burden shifting framework used in Title VII cases. Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 148 (2d Cir. 2002). The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act." 42 U.S.C. § 12203(a). "To establish a prima facie case of retaliation under the ADA, a plaintiff must establish that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir. 2000).

Quest asserts that Grunberg has not set forth facts that can reasonably

---

Delicatessen, Inc., 496 F.3d 229, 240 (2d Cir. 2007) (internal quotations omitted). Grunberg has not provided the court with any set of facts that could lead a reasonable jury to conclude Quest created such an atmosphere in her workplace because of her disability. See Balonze v. Town Fair Tire Centers, Inc., 2005 U.S. Dist. Lexis 5317 at *27-28 (D. Conn. Mar. 31, 2005).

meet the first element of a prima facie ADA retaliation claim because any complaints lodged by Grunberg were not in opposition to any disability discrimination, and thus not considered an activity protected by the ADA.

Grunberg's ADA retaliation claim does not automatically fail simply because summary judgment was granted to Quest on her ADA discrimination claim. Treglia v. town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) ("plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful"). "However, ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity." Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007); see also Ramos v. City of New York, 1997 U.S. Dist. Lexis 10538 at *7 (S.D.N.Y. Jul. 22, 1997) ("While there are no magic words that must be used when complaining about a supervisor, in order to be protected activity the complainant must put the employer on notice that the complainant believes that discrimination is occurring"); Gibson v. Conn. Judicial Dep't Court Support Servs. Div., 2007 U.S. Dist. LEXIS 30950 at *27 (D. Conn. Apr. 25, 2007).

Grunberg offers no evidence in any pleadings, affidavits or exhibits on the record that any complaint she raised made or should have made Quest aware she believed that she was being discriminated against because of her disability. The only opposition she raised was at meetings with Burts and Moody regarding the denials of her transfer requests and elimination of the floater position. There are

no issues of material fact that could lead a reasonable jury to conclude any of Grunberg's complaints constitute protected activity under the ADA. This is particularly true when, as discussed above, no Quest employees had any knowledge of her alleged disability. Accordingly, summary judgment is GRANTED as to Grunberg's ADA and CFEPA retaliation claims.

### D. FMLA Interference and Retaliation

Grunberg alleges that Quest failed to return her to the same or an equivalent position following her FMLA leave in violation of that statute's interference provision. She further claims that Quest retaliated against her for exercising her FMLA rights. Quest asserts that it is factually undisputed that it made the decision to remove Grunberg from her position and post that position as an opening prior to Grunberg notifying anyone associated with the company that she intended to take FMLA leave. Therefore, her interference and retaliation claims must fail as a matter of law.

"A plaintiff may raise separate causes of action for interference with the exercise of FMLA rights and employer retaliation against employees who exercised their FMLA rights." Gauthier v. Yardney Tech. Prods., 2007 U.S. Dist. Lexis 67448 at *9 (D. Conn. Sept. 13, 2007) (citing Potenza v. City of New York, 365 F.3d 165, 167 (2d Cir. 2004)). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of . . . any right" under the statute, 29 U.S.C. § 2615(a)(1), including the right "to be restored by the employer to the

position of employment held by the employee *when leave commenced*," or "an equivalent position." 29 U.S.C. § 2614(a)(1) (emphasis added). "In addition to the substantive guarantees contemplated by the Act, the FMLA also affords employees protection in the event they are discriminated against for exercising their rights under the Act." <u>Gauthier</u>, 2007 U.S. Dist. Lexis 67448 at *10 (D. Conn. Sept. 13, 2007) (quoting <u>King v. preferred Tech. Group</u>, 166 F.3d 887, 891 (7th Cir. 1999)). Employers who discriminate against an employee because he or she has exercised FMLA rights may be held liable under an FMLA retaliation claim.

Burts requested permission from her superiors to remove Grunberg as FOS and post Grunberg's position as an opening on October 9, 2003. That request was approved on October 14, 2003, and the opening was posted on Quest's internal website that day. Grunberg has proffered no evidence to dispute these facts. Grunberg did not begin missing work due to her illness until October 17, 2003, and did not notify Quest that she intended to take FMLA leave until October 21, 2003.

Grunberg's FMLA interference claim fails as a matter of law because Quest made the decision to remove her as FOS and begin searching for a replacement before she notified anyone associated with the company that she intended to exercise her rights under the FMLA. <u>See</u> <u>Kennebrew v. N.Y. City Hous. Auth.</u>, 2002 U.S. Dist. Lexis 3038 at *76 (S.D.N.Y. Feb. 26, 2002) ("No FMLA violation occurs where an employer has already decided to terminate the employee before the employee requests FMLA leave"); <u>Reinhart v. Mineral Techs., Inc.</u>, 2006 U.S.

Dist. LEXIS 89279 at *40 (D. Pa. Nov. 27, 2006); <u>Beno v. United Tel. Co. of Fla.</u>, 969 F. Supp. 723, 726 (M.D. Fla. 1997).

Grunberg also lost the right to be reinstated to the same or similar position under the FMLA following her leave because she had already been deemed unqualified as an FOS prior to her leave and the decision to relieve her from that position had already been made. See <u>Clark v. New York State Elec. & Gas Corp.</u>, 67 F. Supp. 2d 63, 81 (N.D.N.Y. 1999).

Grunberg's only argument is that Quest posted the FOS job opening on its external website on October 17, 2003, the same day she began her absence from work. This fact is irrelevant to the court's determination as Quest had clearly already made its decision at that point. Burts had determined it was appropriate to remove Grunberg as FOS and begin searching for a replacement, and requested and received permission from the company to do so, all prior to Grunberg beginning her FMLA leave.

Grunberg's FMLA retaliation claim must fail for the same reason. Quest made the decision to remove Grunberg from her position prior to her exercise of FMLA rights. It could then not have retaliated against her for exercising her rights by determining she was unqualified for the same or a similar position. See <u>Sista v. CDC ixis North America, Inc.</u>, 445 F.3d 161, 176 (2d Cir. 2006) (employer intent to retaliate because of exercise of FMLA rights a material element of proof in FMLA retaliation claim).

In her complaint, Grunberg also alleges Quest's retaliation took the form of the facts alleged in her original claims for defamation and coercion under CFEPA. As mentioned above, Grunberg has abandoned those claims by failing to provide any factual support. Grunberg abandonment is also evinced by the fact that she does not rely on those allegations in her opposition to this motion. As such, the court finds she has abandoned the theory that the purported defamatory or coercive conduct can constitute an FMLA retaliation claim.

Quest's motion for summary judgment as to Grunberg's FMLA interference and retaliation claims is GRANTED. Quest made the decision to remove Grunberg as FOS before she elected to take FMLA leave; therefore, Quest had no obligation to restore her to the same or similar position as she did not hold that position when she elected to take FMLA leave. Quest could not have retaliated against Grunberg by removing her from that position for exercising FMLA rights because the decision to do so was contemplated and completed prior to her exercise of those rights.

### E. Negligent and Intentional Tort Claims

Grunberg asserts claims for negligent supervision, intentional infliction of emotional distress and negligent misrepresentation. Quest argues that these claims are all preempted by the exclusivity provision of the Connecticut Workers' Compensation Act ("WCA"), Conn. Gen. Stat. § 31-275 et seq., and must fail as a matter of law. In the alternative, Quest asserts that Grunberg has failed to allege

facts that could prove the elements of each individual tort claim.

The WCA is the exclusive remedy for personal injuries arising out of and in the course of employment. See Conn. Gen. Stat. § 31-284(a). The statute's definition of personal injury specifically excludes "mental or emotional impairment, unless such impairment arises from a physical injury or occupational disease." Conn. Gen. Stat. § 31-275(16)(B)(ii). Grunberg's claims allege only emotional injury; she does not allege any physical injury as defined by the WCA. Accordingly, Grunberg's common law claims are not preempted by the WCA.

### 1. Negligent Supervision and Negligent Misrepresentation

Grunberg is precluded from bringing claims for negligent supervision and negligent misrepresentation even though those claims are not preempted by the WCA. The Connecticut Supreme Court has held that claims of negligence in the context of continuing employment that result in emotional distress are barred as a matter of law. See Perodeau v. City of Hartford, 259 Conn. 729, 758-63 (Conn. 2002). Courts in this district have routinely applied this principle to all claims of negligence occurring in the course of employment. See Antonopoulos v. Zitnay, 360 F. Supp. 2d 420, 431-32 (D. Conn. 2005); Rosario v. J.C. Penney, 463 F. Supp. 2d 229, 233 n. 9 (D. Conn. 2006); Dinice-Allen v. Yale-New Haven Hosp., 2008 U.S. Dist. LEXIS 1802 at *19 (D. Conn. Jan. 10, 2008); Pruitt v. Mailroom Tech., Inc., 2007 U.S. Dist. LEXIS 57808 at *21 (D. Conn. Aug. 9, 2007).

Grunberg's claims of negligent supervision and negligent

misrepresentation are based only on facts arising in the context of continual employment. Her negligent supervision claim relies on the removal of the floater position and denial of her transfer requests, and fail as a matter of law. All of the acts complained of occurred while grunberg was employed by Quest and before she elected to take leave. Her claim of negligent misrepresentation is also barred by <u>Perodeau</u>.[6] Quest made the decision to remove Grunberg from her position prior to her taking FMLA leave. The company continued to provide her with employee benefits, including the leave itself, through her return to work on February 16, 2003. Quest's February 5, 2003, letter explicitly stated that Grunberg should contact Quest if she wanted another position upon her return to work, and in fact provided her with such a position when she did return from leave. Thus, Grunberg and Quest were in a continued employment relationship when any alleged negligent misrepresentation was made. The rule of <u>Perodeau</u> should apply, and her claim must fail.

---

[6]The court also finds that Grunberg has not alleged sufficient facts to support a negligent misrepresentation claim. "An action for negligent misrepresentation requires the plaintiffs in the present case to prove that [the defendant] made a misrepresentation of fact, that [the defendant] knew or should have known that it was false, that the plaintiff reasonably relied upon the misrepresentation, and that the plaintiff suffered pecuniary harm as a result thereof." <u>Glazer v. Dress Barn, Inc.</u>, 274 Conn. 33, 73 (Conn. 2005). Grunberg has failed to persuade the court that a reasonable jury could find that the contents of the note sent along with the February 5, 2005, letter was factually false. The only evidence in support of this claim are the letter and the note. There is no inconsistency between the two documents. The letter offered Quest's assistance in finding Grunberg an alternate position should she return to work. The note invited Grunberg to return to work on February 16, 2003, despite the expiration of her FMLA leave. Upon her return, Quest in fact aided her in finding continued employment within the company.

The facts alleged by Grunberg in support of her negligent supervision and negligent misrepresentation claims fall squarely within the rule barring all claims of negligence against an employer arising in the context of continued employment. As a result, summary judgment must be GRANTED as to negligent supervision and negligent misrepresentation.

## 2. Intentional Infliction of Emotional Distress

Grunberg's claim for intentional infliction of emotional distress is not preempted by the WCA because she suffered no physical injury, nor is it barred by the rule articulated in <u>Perodeau</u> that applies only to torts of negligence.

In order for Grunberg to prevail on her claim for intentional infliction of emotional distress, she must show: "1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; 2) that the conduct was extreme and outrageous; 3) that the defendant's conduct was the cause of the plaintiff's distress; and 4) that the emotional distress sustained by the plaintiff was severe. <u>Petyan v. Ellis</u>, 200 Conn. 243, 253 (Conn. 1986). Whether Quest's conduct was extreme and outrageous is a question of law for the court. <u>See</u> <u>Appleton v. Board of Educ.</u>, 254 Conn. 205, 210 (Conn. 2000).

The extreme and outrageous requirement necessitates that conduct "exceeds all bounds usually tolerated by decent society . Liability has been found only where the conduct has been so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 210-11 (internal citations omitted).

Grunberg's allegations fall well short of this well established definition of extreme and outrageous conduct. At most, Grunberg was exposed to a series of everyday business decisions. The fact that she did not agree with her supervisors decisions does not create a cause of action for intentional infliction of emotional distress. This finding is further buttressed by Grunberg's own admissions that no one employed at Quest had any awareness of her treatment or diagnosis for depression.

As there are no issues of material fact that could lead a reasonable jury to find for Grunberg, summary judgment is GRANTED on her claim for intentional infliction of emotional distress.

### F. Breach of Contract and Constructive Discharge

"As a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will" in Connecticut. D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 212 (Conn. 1987). An exception to this general rule exists where a former employee can show a demonstrably improper reason for his or her dismissal in violation of some important public policy. Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474-75 (Conn. 1980). Courts allow tort claims for wrongful discharge, including the tort of

constructive discharge, to proceed only when the former employee is "*otherwise without a remedy* and that permitting the discharge to go unaddressed would leave a valuable social policy to go unvindicated."  Burnham v. Karl & Gelb, P.C., 252 Conn. 153, 165 (Conn. 2000) (emphasis in original).  The existence of a statutory scheme enacted to address the public policy articulated by a discharged employee preempts and precludes a tort claim for wrongful discharge in violation of that same public policy.  Id. at 162-63.

Grunberg does not articulate a public policy violated by her alleged constructive discharge.  The court can only assume that she would rely on the public policy of preventing disability discrimination in the workplace.  As discussed above, this important public policy is adequately addressed by the presence of the ADA and CFEPA.  Those statutes contain specific provisions creating causes of action for employees discriminated against because of their disability, or retaliated against for opposing such discrimination, and therefore preclude all tort claims for wrongful discharge in violation of the public policy against disability discrimination, including Grunberg's claim for constructive discharge.  The preclusion of Grunberg's claim is irrespective of the success or failure of her ADA or CFEPA claims.  Id.  Summary judgment as to the constructive discharge claim is GRANTED.

Another exception to Connecticut's rule of at will employment is breach of

a contract implied in fact.[7]  "A contract implied in fact, like an express contract, depends on actual agreement."  Reynolds v. Chrysler First Commer. Corp., 40 Conn. App. 725, 730 (Conn. App. Ct. 1996).  For her breach of contract claim to survive, Grunberg must offer facts that would allow a reasonable jury to conclude Quest agreed through either its words, actions, or conduct, to enter into some form of contractual agreement under which Grunberg would not be terminated. Coelho v. Posi-Seal International, Inc., 208 Conn. 106, 112 (Conn. 1988).

Grunberg's claim rests on general statements made in Quest's employment documents outlining the existence of a progressive disciplinary policy.  In certain circumstances, employer statements in personnel manuals can create implied contracts between an employer and its employees.  See Gaudio v. Griffin Health Servs. Corp., 249 Conn. 523, 533 (Conn. 1999).  "A contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties.  The mere fact that the plaintiff believed the guidelines to constitute a contract does not bind the defendant without some evidence that it intended to be bound to such a contract." Reynolds, 40 Conn. App. at 730 (internal citations omitted).  Employers can protect themselves against claims that their employment documents create

_____

[7]Count 11 of the complaint is for breach of contract.  In briefing the current motion, both parties advance legal arguments regarding breach of an implied contract.  The court will consider these arguments regarding the existence of an implied contract, as on the face of the pleadings no express, written contract was breached.

contracts implied in fact by inserting explicit disclaimers and explanatory text clearly stating the employer does not intend to contract.  See Finley v. Aetna Life & Casualty Co., 202 Conn. 190, 199 n. 5 (Conn. 1987) (overruled on other grounds by Curry v. Burns, 225 Conn. 782 (Conn. 1993)).  These disclaimers could, of course, be rendered moot if an employee can show a contract was created through an employer's statements or actions beyond the employment documents themselves.

Quest points to specific disclaimers noting an intent not to create a contract through its employment documents or company policies included in its Employee Agreement, offer letter and Acknowledgment of Receipt of its Employee Handbook, all signed by Grunberg.  Grunberg does not dispute these facts.  She does not alert the court of any statements made to her by any Quest employee promising that the company would not terminate her unless it strictly followed a specific progressive disciplinary policy.  In the absence of such facts, there is no evidence on the record that could lead a reasonable jury to conclude Quest intended to enter into a contract obligating it to employ a specific progressive disciplinary policy, nor that Quest and Grunberg had any meeting of the minds.  Accordingly, summary judgment must be GRANTED on Grunberg's breach of contract claim.

### IV.  Conclusion

For the reasons stated above, the motion for summary judgment is

GRANTED.  Grunberg has failed to point to any issues of any material fact that could lead a reasonable jury to conclude she could prevail on any of her claims.

The clerk shall terminate this action.

IT IS SO ORDERED.


_____/s/_____

Vanessa L. Bryant

United States District Judge

Dated at Hartford, Connecticut: February 5, 2007.